UNITED STATES DISTRICT COURT
MIDLLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**SERGIO FUENTES,**

    **Plaintiff,**

v.                                    Case No.: 3:09-cv-1177-MMH-JBT

**JOHNSON, et al.,**

    **Defendants.**

_____/

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants **Johnson**, **Marshall**, and **Lindsey**,[1] through undersigned counsel, submit this Motion for Summary Judgment pursuant to Rule 56, Federal Rules of Civil Procedure, and request summary judgment be granted in their favor. Defendants state the following:

## PRELIMINARY STATEMENT

Plaintiff Fuentes is an inmate in the custody of the Florida Department of Corrections ("FDOC"). Plaintiff has filed a third amended civil rights complaint alleging a violation of the Eighth Amendment of the U.S. Constitution. (DE 35)

## PLAINTIFF'S ALLEGATIONS

Plaintiff alleges the following: On August 16, 2009, Officer Johnson and Officer Marshall escorted Plaintiff from medical to his cell in M-wing. (DE 35 at 21) Plaintiff entered the cell and was followed into the cell by Officer Johnson who proceeded to take off the leg shackles and the handcuffs. (Id.) Officer Johnson turned to leave and "suddenly turned and lashed out with his right arm and struck [Plaintiff] right below his left eye." (Id.) Officer Johnson then jumped on Plaintiff and beat him. (Id. at 22) After a period of time, Officer

---

[1] The Court's CM/ECF docket shows that Defendants Marshall and Lindsey have been terminated from this case. The undersigned cannot confirm that from a Court order.

Marshall, who was watching the beating from the door to the cell, pulled Johnson off of Plaintiff and the two officers exited the cell.

Plaintiff asserts that Captain Lindsey saw Plaintiff after the alleged beating and is only a witness to the effects of the "torture against inmate Fuentes." (Id. at 24)

Plaintiff requests pecuniary compensation for the alleged violation solely from Officer Michael Johnson. (Id. at 25)

## STATEMENT OF MATERIAL AND GENUINE FACTS

1. Plaintiff is a litigious inmate with a history of filing frivolous lawsuits. (See the following middle district cases: 3:04-cv-500-JHM-MMH; 3:05-cv-824-TJC-MCR; 3:05-cv-1334-HWM-MMH; 3:06-cv-00198-HLA-HTS; 3:06-cv-00578-TJC-TEM; 3:10-cv-00006-HLA-TEM; 3:10-cv-00184-TJC-MCR; and 3:10-cv-00922-HES-JRK) Plaintiff's *modus operandi* is to file frivolous lawsuits with the hope of receiving some sort of settlement when his false statements cannot be conclusively proven to be false.

2. Plaintiff is a dangerous inmate currently incarcerated for manslaughter. (Exh. A) Plaintiff stabbed a person to death with a knife. (Id.) Plaintiff has also been given numerous disciplinary reports for fighting, assault, disorderly conduct, spoken threats, and possession of contraband. (Exh. B) Plaintiff is a dangerous and violent individual.

3. At approximately 1:10 p.m. on August 16, 2009, Plaintiff was escorted by Officer Marshall and Officer Johnson from medical to his cell in M-wing. Once at cell M1-226S, Plaintiff entered his cell and knelt on his bunk with his face towards the wall. Officer Johnson attempted to remove the leg restraints. After Officer Johnson had removed the left leg restraint and was attempting to remove the leg iron from Plaintiff's right leg, Plaintiff attempted to stand up. Officer Johnson gave Plaintiff a verbal order to remain on his bunk which went unheeded.

Plaintiff continued to attempt to get up, at which time Officer Johnson placed his left hand in the middle of Plaintiff's upper back and forced him against the wall face first causing Plaintiff to strike the left side of his face against the wall.  Officer Marshall immediately entered the cell at this time and ordered Plaintiff to stop attempting to stand up, to which he complied.  Officer Johnson then released his hold and all force ceased.  Officer Johnson then continued to remove the leg iron from Inmate Fuentes right leg.  Officer Johnson and Officer Marshall then exited the cell and Officer Marshall secured the cell door.  Once the cell door was secured, Officer Marshall removed the handcuffs via the cell flap without further incident.  (Exh. C, Exh. D, Exh. E)

4.  Plaintiff stated to the officers from inside the cell, "You, Marshall, and the cracker are going down."  Plaintiff then started hitting himself in the face with his deodorant canister.  (Exh. C; Exh E)

5.  Upon securing Plaintiff in the cell, Officer Johnson notified the control room and requested a camera and requested the shift officer-in-charge to be present.  At approximately 1:15 p.m., Captain Jeffery Lindsey and Lieutenant John McSpadden arrived at cell front.  At approximately 1:16 p.m., camera operator Office J. Dover arrived and began videotaping and continued videotaping until the conclusion of this incident.  (Exh. C)

6.  Plaintiff was seen via cell front by SLPN T. Archer, who noted the following injuries: a small raised area noted to the left eye area and redness to Plaintiff's chest.  (Exh. C; Exh. F)

7.  Plaintiff received a DR for 6-1, Disobeying a Verbal Order, written by Officer Johnson.  (Exh. G)

8. Plaintiff was seen again by medical at 3:45 p.m. on August 16, 2009. At this time, Plaintiff's left eye demonstrated ecchymosis and minimal swelling. No other injuries were noted (Exh. H)

9. Plaintiff was seen by medical on August 17, 20, 23, and 27. (Exh. I)

10. During Plaintiff's deposition, he stated that his only discernible injuries from the use of force were the trauma to eye and his chest. (Exh. J at pg.44, lines 17-22; pg. 54 at lines 11-25) He elaborated that he had an injury of unknown size and color under his left eye (Id. at pgs. 48-50) and marks on his chest which did not break the skin (Id. at pg. 51).

11. The August 16, 2009 use of force on Plaintiff was investigated by the Office of the Inspector General and determined to be an approved use of force. (Exh. K)

## MEMORANDUM OF LAW

**I.     Summary judgment standard.**

Summary judgment is proper if the pleadings and sworn statements show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corporation v. Catrett, 477 U.S. 317, 322-23 (1986). The party moving for summary judgment bears the initial burden of demonstrating an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 323. Upon meeting this burden, the burden shifts to the nonmoving party to present evidentiary material demonstrating that a genuine issue of material fact exists. Id. at 324.

Applicable substantive law identifies those facts that are "material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Factual issues must have a real basis in the record to be considered genuine and the nonmoving party must show more than a "metaphysical doubt" regarding the material facts. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S.

574, 586-87 (1986).  The evidence and reasonable inferences drawn from the evidence are viewed in the light most favorable to the nonmoving party.  Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999).

Although all reasonable inferences are made in favor of the nonmoving party, a court need not permit a case to go to a jury when the inferences drawn from the evidence and upon which the nonmoving party relies are "implausible."  Cuesta v. School Bd. of Miami-Dade County, 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted).  "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  Scott v. Harris, 550 U. S. 372, 380 (2007).  A mere "scintilla" of evidence in support of the nonmoving party's position is not sufficient; there must be evidence upon which a jury could reasonably find for the nonmoving party.  Anderson, 477 U.S. at 252; see also Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment . . .").  In other words, summary judgment is warranted against a nonmoving party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Further, "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Scott v. Harris, 550 U.S. 372, 380 (2007).

**II.   Plaintiff has not established an Eighth Amendment violation against Officer Johnson or Officer Marshall.**

The evidence presented by Defendants shows that the use of force on Plaintiff was not a violation of the Eighth Amendment, but a necessary action to stop Plaintiff, a dangerous and violent inmate, from disobeying orders and from potentially harming an officer.  (Exh's A, B, C,

D, E, G, and K) Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007) (stating that prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding); Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990) ("We have held that when a prisoner created a disturbance by failing to follow a prison guard's instructions and shouting obscenities, it was not unreasonable for the guard to grab the prisoner by the throat and shove him against the prison bars."); Hudson v. McMillian, 503 U.S. 1, 6 (1992) (noting that prison administrators should be accorded wide-ranging deference in the execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security) (quotations and citations omitted).  Officer Johnson believed force was necessary and used as little force as necessary to cease Plaintiff's disruptive actions and to bring him under control. (Exh. D)   Whitley v. Albers, 475 U.S. 312, 321(1986) ("But equally relevant are such factors as the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response.")   That Officer Johnson used as little force as necessary is buttressed by the fact that Plaintiff received only de minimis injury from the use of force. (Exh's F, H, I, J)   Hudson, 503 U.S. at 7 (noting that the extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation); Wilkins v. Gaddy, 130 S.Ct. 1175, 1178 (2010) ("The extent of injury may also provide some indication of the amount of force applied.").  Also, Plaintiff was immediately taken to medical where he was given a full examination by medical personnel. (Exh's F and H) Cockrell, 510 F.3d at 1312 (noting that the action taken by the jail guards of immediately summoning medical assistance for the inmate

6

tempered the severity of the forceful response and makes it less likely that either of the guards were acting sadistically instead of in good faith).

The evidence submitted shows Defendants Johnson acted without malice and in an effort to restore order and discipline. (Exh's A, B, C, D, E, G, and K) Due to Plaintiff's attempt to stand even after being ordered to stop[2] (Exh's C, D, and G) and Plaintiff's history of violence (Exh's A and B), action had to be taken to bring Plaintiff under control, to preserve the wellbeing of the officers, and to restore order so that prison operations could continue in an undisrupted manner. Brown v. Smith, 813 F.2d 1187, 1189 (11th Cir. 1987) (stating whether prison guard's application of force to inmate is actionable turns on whether that force was applied in good faith effort to maintain or restore discipline, and neither judge nor jury is free to substitute its own judgment for that of prison officials).

### III. Plaintiff has not established an Eighth Amendment violation against Captain Lindsey.

To the extent Plaintiff is suing Captain Lindsey, Plaintiff fails to state any claim against him. Plaintiff does not allege that Captain Lindsey was present during the use of force, but that Lindsey later arrives at the cell door to retrieve the black metal box that was accidently dropped into Plaintiff's cell. (DE 35 at 23; Exh. C) Because Captain Lindsey neither participated in the use of force nor witnessed it, he should be dismissed from this case. (Exh. C)

### IV. Plaintiff cannot recover compensatory or punitive damages.

Any request by Plaintiff for compensatory or punitive damages is precluded by 42 U.S.C. § 1997e(e) if he cannot demonstrate more than *de minimis* physical injury. 42 U.S.C. § 1997e(e), as enacted by the Prison Litigation Reform Act, provides "no action may be brought

---

[2] Rule 33-602.210(1), F.A.C., allows a correctional officer to use force to defend himself or another against an inmate using unlawful force, to quell a disturbance, or to overcome an inmate's physical resistance to a lawful command. Section 944.35, Florida Statutes, also allows force in such situations.

7

by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury."

The evidence shows that Plaintiff suffered *de minimis* physical injury from the August 16, 2009 incident. Plaintiff alleges only the following injuries from the use of force: a mark under his left eye and marks to his chest. (Exh. J at pg.44, lines 17-22; pgs. 48-51; pg. 54 at lines 11-25) He was examined immediately after the August 16, 2009 use of force and the following injuries were recorded: "reddened area to upper chest noted, skin intact" and "raised area approximate size of nickel noted to left eye area, skin intact, no bleeding noted @ this time, reddened area noted to raised area." (Exh. F) A few hours after the incident, Plaintiff was examined again with the following noted: "left eye eccymotic with minimal swelling." (Exh. H) Additionally, it was recorded that Plaintiff had no visual disturbances or other observable injuries. (Id.)

Thus, Plaintiff essentially had a bruise under his eye and some redness to his chest. By the time of the second exam, within a few hours after the incident, the redness to the chest was gone. A few follow-up visits to medical by Plaintiff over the next eleven days confirm that his injuries were minimal as the objective[3] observations by medical staff showed the same injuries. (Exh. I) Plaintiff stated that he stopped going to medical in relation to the use of force after the August 27, 2009 visit. (Exh. L at pg. 66, lines 10-22)

The case law in the Eleventh Circuit clearly shows that bruises and scrapes are *de minimis* injury. Quinlan v. Personal Transport Services Co., 329 Fed. App'x 246, 249 (11th Cir. 2009) (Exh. M); Dixon v. Toole, 225 Fed. App'x 797 (11th Cir. 2007) (Exh. N); Mann v. McNeil, 360 Fed. App'x 31, 32 (11th Cir. 2010) (Exh. O). Other courts in this circuit have

---

[3] Whitehead v. Burnside, 403 Fed. App'x 401, 403 (11th Cir. 2010) ("Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records.") (Exh. R).

8

deemed an injury which is so minor that it would not require a free world person to visit a doctor or make an emergency room visit to be *de minimis*. Watkins v. Trinity Service Group Inc., No. 8:05-cv-1142-T-24MSS, 2006 WL 3408176 (M.D.Fla. Nov. 27, 2006) ("Moreover, the physical harm described by Watkins is *de minimis* because the injuries would not require a free world person to visit an emergency room, have a doctor attend to, give an opinion on, diagnosis, or prescribe medical treatment for the injury.") (Exh. P) (citing Luong v. Hatt, 979 F.Supp. 481, 486 (N.D.Tex. 1997)); Thomas v. Pieniozek, No. 09-14255-CIV-GRAHAM, 2011 WL 810696 (S.D.Fla. Feb. 1, 2011) ("The Court in *Luong* defined '*de minimis*' injuries to include injuries such as 'scrapes, scratches, cuts, abrasions, bruises, pulled muscles, back aches, leg aches, etc., which are suffered by free world people in just every day living for which they never seek medical professional care,' which may last 'even up to two or three weeks,' and which can be treated by 'home remedy care,' with over-the-counter drugs, heating pads, rest, etc., and the Court held that such injuries are excluded from constitutional recognition under § 1997e(e).") (Exh. Q).

      Here, Plaintiff suffered from mere bruising under his left eye and some reddening to his chest. (Exh. J at pg.44, lines 17-22; pgs. 48-51; pg. 54 at lines 11-25; Exh. F)  The reddening of the chest was gone within hours after the incident. (Exh. H)  Plaintiff was given ibuprofen and told to apply a warm compress to the eye. (Exh. I at 8/17/09 and 8/20/09 entries)  Plaintiff's injuries were so insignificant that most free world persons would not seek medical assistance and would apply home remedies or use over-the counter drugs for treatment.  As such, Plaintiff cannot show a physical injury that was more than *de minimis* from the August 16, 2009 incident. Accordingly, any request for damages other than nominal is improper. Smith v. Allen, 502 F.3d

1255, 1271 (11th Cir. 2007) (stating that § 1997e(e) precludes an inmate's claims for compensatory and punitive damages without a prior showing of physical injury).

## CONCLUSION

In accordance with the aforementioned evidence and the cited case law, Defendants request summary judgment be granted in their favor.  Defendants further pray that Plaintiff's request for punitive and compensatory damages be dismissed for failure to demonstrate more than *de minimis* physical injury.

Respectfully submitted,

**PAMELA JO BONDI**
**ATTORNEY GENERAL**

s/ Lance Eric Neff
LANCE ERIC NEFF
Assistant Attorney General
Florida Bar Number 26626
Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399-1050
(850) 414-3300 - Telephone
(850) 488-4872 - Facsimile
Email: Lance.Neff@myfloridalegal.com

## CERTIFICATE OF SERVICE

I CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. Mail to: Sergio Fuentes, DC# 125053, F.S.P., 7819 N.W. 228th Street, Raiford, Florida, 32026-1000 on this 14th day of December, 2011.

s/ Lance Eric Neff
LANCE ERIC NEFF